**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Shawn Christopher Erwig, | No. CV-20-00338-PHX-DGC |
| Plaintiff, | |
| v. | **ORDER** |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Shawn Erwig seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("Defendant"), which denied his disability insurance benefits under sections 216(i) and 223(d) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is not supported by substantial evidence and is based on legal error, Defendant's decision will be vacated and the matter remanded for further administrative proceedings.

**I.    Background**.

Plaintiff is a 52-year-old man with a high school equivalency degree who has worked at various semiskilled to skilled jobs, including as a chef and waiter, since 1991. Doc. 16, A.R. 31, 279. Plaintiff applied for disability benefits on January 9, 2017, alleging disability beginning June 1, 2016, a few days after he was hospitalized for a mental breakdown. A.R. 363, 369-70. Plaintiff alleges that his mental health issues, including depression with psychotic features and bipolar disorder, are so debilitating that they have

left him unable to work or function normally in daily life. *See* A.R. 293-308; Doc. 19 at 3-10. Plaintiff also alleges that he suffers from serious knee pain which makes it difficult for him to lift, bend, stand, kneel, climb stairs, and walk more than 15 minutes without rest. A.R. 298.

On November 9, 2018, Plaintiff and a vocational expert ("VE") appeared and testified at a hearing before the ALJ. A.R. 131-162. On December 12, 2018, the ALJ issued an unfavorable decision, finding Plaintiff was not disabled within the meaning of the Social Security Act. A.R. 24-33. The ALJ's decision became Defendant's final decision when the Appeals Council denied review on December 17, 2019. A.R. 3-6.

## II. Legal Standard.

The Court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside Defendant's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the whole record. *Id.* In determining whether substantial evidence supports a decision, the Court must consider the entire record and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* (internal citations and quotation marks omitted). As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). In reviewing the ALJ's reasoning, the Court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

**III.    The ALJ's Sequential Evaluation Process.**

Whether a claimant is disabled is determined using a five-step evaluation process. The claimant must show that (1) he is not currently working, (2) he has a severe impairment, and (3) his impairment meets or equals a listed impairment or (4) his residual functional capacity ("RFC") precludes him from performing past work. If the claimant meets his burden at step three, he is presumed disabled and the process ends. If the claimant meets his burden at step four, the Commissioner must show at the fifth step that the claimant is able to perform other work given his RFC, age, education, and work experience. 20 C.F.R. § 416.920(a)(4)(i)-(v); *see Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity from his alleged onset date of June 1, 2016. A.R. 26. At step two, the ALJ found that Plaintiff had the following severe impairments: schizophrenia, bipolar I, depression, and knee problems. *Id.* At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a Listing. A.R. 27. At step four, the ALJ determined that Plaintiff had the RFC to perform medium work, in addition to occasionally climbing ladders, ropes, or scaffolds. A.R. 28. The ALJ also found that Plaintiff could understand, remember, and carry out short, simple instructions; make simple work-related judgments and decisions; have no more than occasional interactive contact with the public and frequent interactive contact with co-workers or supervisors; and have no more than occasional changes in a routine work setting. *Id.* The ALJ noted, however, that Plaintiff did not have the RFC to perform the full range of medium work because his "ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations." A.R. 32. The ALJ concluded that Plaintiff could not return to his past relevant work as a waiter and chef. A.R. 31. The ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act because the VE testified that Plaintiff was capable of performing other work existing in significant numbers in the national economy, including the representative jobs of a vehicle cleaner, industrial cleaner, or hand packager. A.R. 32.

**IV.    Discussion.**

Plaintiff's appeal focuses on the ALJ's conclusions about his mental impairments only. Doc. 19 at 3. Plaintiff argues that the ALJ erred by: (1) rejecting Plaintiff's symptom testimony without specific, clear, and convincing reasons supported by substantial evidence; and (2) failing to articulate specific and legitimate reasons for discrediting the opinions of Plaintiff's treating mental health providers, Darin Darlington and Philip Viebeck. Doc. 19 at 14-23.[1]

### A.    Evaluation of Plaintiff's Symptom Testimony.

In evaluating a claimant's symptom testimony, the ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce the symptoms alleged. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). The claimant is not required to show that his impairment could reasonably be expected to cause the severity of the symptoms he has alleged, only that it could reasonably have caused some degree of the symptoms. *Id*. Second, if there is no evidence of malingering, the ALJ may reject the claimant's symptom testimony only by giving specific, clear, and convincing reasons. *Id.* at 1015. "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" *Id.* (quoting *Moore v. Comm'r of Soc. Sec.,* 278 F.3d 920, 924 (9th Cir. 2002)). A finding that a claimant's testimony is not credible "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (citation and quotation marks omitted).

#### 1.    Step One: Objective Medical Evidence of an Impairment.

The ALJ found objective medical evidence of an impairment that could reasonably be expected to produce the symptoms alleged by Plaintiff. A.R. 29. Plaintiff testified that

---

[1] Citations are to page numbers placed at the top of each page by the Court's electronic filing system, not to original page numbers on the documents.

- 4 -

he was admitted to a medical center in Hawaii for around 20 days in June 2016 because he was unable to make decisions and cried frequently. A.R. 138. Plaintiff has been unable to work since that time due to his depression and bipolar disorder. His symptoms include frequent, uncontrollable crying; decreased appetite and energy; excessive sleep; feelings of increased stress, guilt, and worthlessness; and little interest in any social activity outside the home. A.R. 139-49. He also has trouble concentrating, remembering, communicating with others, and getting tasks done because he is easily distracted and suffers depression which causes him a "pain in his heart." A.R. 145. He needs reminders about basic life functions such as eating, changing his clothes, and bathing. *Id.* He takes medication for his depression and regularly attends mental health counseling. A.R. 141. He occasionally house-sits his neighbor's dog in exchange for weekly rides to the grocery store, and lives with a friend who provides him with a place to live. A.R. 149, 157. While he has a long history of alcoholism, Plaintiff has not engaged in heavy drinking since 2016. A.R. 148.

### 2. Step Two: Symptom Testimony Unsupported by the Record.

The ALJ found Plaintiff's statements about the intensity, persistence, and limiting effects of the symptoms "not entirely consistent" with the medical evidence and "other evidence in the record." A.R. 29.

"Pain of sufficient severity caused by a medically diagnosed 'anatomical, physiological, or psychological abnormality' may provide the basis for determining that a claimant is disabled." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (citing 42 U.S.C. § 423(d)(5)(A); *Bunnell v. Sullivan*, 947 F.2d 341, 344-45 (9th Cir. 1991)). "Once a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on lack of objective medical evidence to fully corroborate the alleged severity of pain." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004) (citation and alterations omitted); *see Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996) ("The claimant need not produce objective medical evidence of the pain . . . itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable

impairment and the symptom.") (citing *Bunnell*, 947 F.2d at 345-48); 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the objective medical evidence does not substantiate your statements."); *see also* SSR 95-5p, 1995 WL 670415, at *1 (Oct. 31, 1995) ("Because symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, careful consideration must be given to any available information about symptoms."). Unless the ALJ "makes a finding of malingering based on affirmative evidence thereof, [he] may only find [the claimant] not credible by making specific findings as to credibility and stating clear and convincing reasons for each." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (citing *Smolen*, 80 F.3d at 1283-84).

The ALJ found no evidence of malingering. Defendant highlights a single sentence from the ALJ's decision noting that at an April 2017 appointment, Plaintiff stated he could not work due to his mental and physical impairments, yet also mentioned that he was "not interested in pursuing a job at that time." A.R. 29. Defendant argues that this, as well as other portions of the medical record, suggest that Plaintiff was more interested in "documenting disability than receiving treatment to become more functional." Doc. 20 at 6.[2] But Defendant has not explicitly argued that this statement constitutes malingering, and – given that it was referenced in the ALJ's decision without any discussion or analysis, alongside several other portions of medical testimony – it is unclear what importance, if any, the ALJ attached to it. A.R. 29; Doc. 26 at 9.

Because the ALJ found no malingering, he may discount Plaintiff's testimony only

---

[2] The Commissioner cites several other portions of the medical record allegedly suggesting that Plaintiff made inconsistent statements regarding his ability to work. Doc. 20 at 5-6. While it is true that the ALJ is entitled to consider inconsistencies in the evidence, most of the examples provided by the Commissioner were never mentioned in the ALJ's decision. *See id.* As Plaintiff correctly notes, "the ALJ, not this Court, is charged with supplying substantial evidence to support the agency's rationale." Doc. 19 at 22; *see also Burrell*, 775 F.3d at 1138 (noting that a court "may not take a general finding … and comb the administrative record to find specific conflicts.").

- 6 -

"by making specific findings as to credibility and stating clear and convincing reasons for each." *Robbins*, 466 F.3d at 883. "'General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *see Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (same). Moreover, treatment records "must be viewed in light of the overall diagnostic record." *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (finding ALJ's credibility determination unsupported in part because "[w]hen read as a whole, the treatment notes do not undermine [the claimant's] testimony.").

The ALJ found that Plaintiff's testimony was not supported by the medical record for "the reasons explained in this decision," but it is unclear what those reasons are. A.R. 29. "The ALJ's decision . . . drifts into a discussion of the medical evidence [but] provides no *reasons* for the credibility determination," leaving the Court to scour "seemingly random places in the decision" to discern the ALJ's rationale. *Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014) (emphasis in original). As far as the Court can tell, the ALJ's decision is based on two portions of the medical record: (1) treatment notes from Plaintiff's mental health providers indicating that medication sometimes improved Plaintiff's symptoms; and (2) notes from Plaintiff's primary care physician suggesting that his knee pain was not significantly debilitating. *See* A.R. 27, 29-30. Because Plaintiff only contests the ALJ's conclusions about his mental health symptoms, the Court will address these portions only.[3]

---

[3] The ALJ's step three analysis, which considers the medical severity of Plaintiff's impairments, cites to specific portions of the medical record showing that Plaintiff's impairments do not meet or medically equal an impairment listed in the Listings. A.R. 27-28. Although not in the section discussing Plaintiff's symptom testimony, the ALJ's step three analysis touches upon several of the symptoms Plaintiff described in his testimony – including difficulty concentrating and interacting with others – and discusses why the medical record purportedly does not support these impairments. *Compare* A.R. 27-28 *with* A.R. 139-45. But "[b]ecause discussion of those issues is not in the section of the ALJ's decision addressing [Plaintiff's] symptom testimony, they are not properly considered credibility findings." *Trevizo v. Berryhill*, 871 F.3d 664, 682 n.10 (9th Cir. 2017); *see also Leavell v. Comm'r of Soc. Sec. Admin.*, No. CV-18-00303-PHX-SMB, 2019 WL 6873136, at *5 (D. Ariz. Dec. 17, 2019) ("Moreover, discussion of issues not in the section of the ALJ's decision addressing a claimant's symptom testimony are not properly considered

The ALJ observed that upon discharge from a weeks-long stay at the hospital in June 2016 – where he was placed on a 48-hour hold and diagnosed with major depressive disorder with psychotic features – Plaintiff appeared to be "responding to questions and thinking clearer." A.R. 29, 369-72. During counseling sessions over the next two years, Plaintiff reported that medication and exercise were improving his symptoms. *See* A.R. 29-30. In September 2018, Plaintiff told one of his mental health providers, Viebeck, that his medication made him feel less depressed and that his life was leveling out. A.R. 30, 501. In October 2018, Plaintiff told his primary care physician – who was examining Plaintiff for his knee pain – that he felt that his bipolar disorder was well-controlled. A.R. 30, 576. The physician observed that Plaintiff's mood, affect, behavior, judgment and thought content were normal, and that his current medication regime was effective. A.R. 576.

Plaintiff alleges that the ALJ's discussion of medical evidence was erroneous because it merely provided a summary of the medical evidence rather than tying the characterization of the medical record to any particular symptom testimony. Doc. 19 at 16. The Court agrees. As discussed above, the ALJ cited a few instances from the medical record suggesting that Plaintiff was improving with medication and exercise. But the ALJ never discussed which portions of the medical record conflict with which portions of Plaintiff's testimony. *Burrell*, 775 F.3d at 1138; *see also Nelson v. Commr. of Soc. Sec. Admin.*, No. CV-19-08027-PCT-JZB, 2020 WL 1510332, at *3 (D. Ariz. Mar. 30, 2020) ("Indeed, this Court has repeatedly rejected ALJ rationale that discussed medical evidence

---

credibility findings."). Moreover, the Court cannot conclude that the ALJ's discussion of Plaintiff's impairments in the step three analysis constitutes a "clear and convincing" reason for finding Plaintiff's symptom testimony not credible. *Robbins*, 466 F.3d at 883. In the step three analysis, the ALJ must evaluate whether Plaintiff's impairments render him *presumptively* disabled under the specified medical criteria in the Listings, without consideration of additional factors. *See* 20 C.F.R. 404.1520(d); *see also Barker v. Sec'y of Health & Hum. Servs.*, 882 F.2d 1474, 1477 (9th Cir. 1989). This is a high bar to clear: "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). The ALJ's reasons for concluding that Plaintiff's impairments do not render him *per se* disabled under the regulations are thus not the same as credibility determinations.

but provided no connection between that discussion and rejection of claimants' symptom testimony.") (collecting cases). Nor does the ALJ address how these citations from the record – when viewed in the context of the medical record as a whole – undermine Plaintiff's testimony about the serious mental health symptoms he lives with, including feelings of stress, guilt, and worthlessness; decreased appetite and energy; lethargy; poor memory; and inability to drive, concentrate, or socialize with others. *See* A.R. 139-49.

When read as a whole, the treatment notes do not undermine Plaintiff's testimony. The record reveals that Plaintiff's severe depression and mood disorder persisted despite treatment. When Plaintiff was first hospitalized in June 2016, he presented as "catatonic" and "mute" despite a negative drug and alcohol screening. A.R. 369. During Plaintiff's hospital stay, he was diagnosed with major depressive disorder, recurrent, with psychotic features. *See id.*

Plaintiff's depression and bipolar symptoms continued over the next two years.[4] At an August 2016 behavioral health assessment, Plaintiff reported depressed mood, diminished interest in activities, decreased appetite, fatigue, and difficulty concentrating. A.R. 466-67. At a therapy session the same day, Plaintiff reported thoughts of suicide. A.R. 393, 470-71. These suicidal thoughts continued into September 2016, when Plaintiff also reported that he heard voices in his head. A.R. 386. Plaintiff's mental health providers consistently observed Plaintiff presenting as unclean and unkempt. A.R. 385-87, 393, 470, 506, 510 (August-November 2016; August-September 2018).

Plaintiff also demonstrated slowed motor behavior and speech, slowed thought content, or a depressed and tearful mood. A.R. 446, 496-97, 506, 508, 510, 519, 543, 557, 576-77 (August-September 2016; January-December 2017, May-September 2018). In January 2017, Plaintiff exhibited paranoid symptoms, claiming tearfully that people had tried to kill him in the past and that he should serve as the inspiration for a film. A.R. 445. In March 2017, Plaintiff told his therapist that he was reluctant to share his struggle with

---

[4] Symptoms of major depressive disorder and bipolar disorder include psychomotor retardation, paranoia, and emotional lability, characterized by mood swings and tearful and despairing episodes. *See* Doc. 19-1 at 1-6 (citing medical literature).

others for fear of being judged, and that his "chest hurts from the sadness and depression." A.R. 437.  In December 2017, he stated that his depression made his "heart hurt . . . [it] feels like sadness or sorrow all the time." A.R. 541.  Plaintiff also reported insomnia on a regular basis.  A.R. 479, 519, 540 (September-December 2017, May 2018).  In June 2018, Plaintiff's medication was again increased after other treatments, including therapy, riding his bike, and chair yoga, appeared unhelpful.  A.R. 514.

Some of Plaintiff's symptoms – particularly his suicidal thoughts, paranoia, and the voices in his head – do appear to have improved or disappeared with medication.  *See, e.g.*, A.R. 496, 509, 518, 554.  But this improvement often appears sporadic and inconsistent, and several portions of the medical record indicate that Plaintiff's medication had a limited effect on his depression.  In December 2017, Plaintiff's therapist noted that he "continues to be depressed on a daily basis with minimal relief." A.R. 540.  At a January 19, 2017 appointment, Plaintiff reported that he was depressed and isolated despite some improvement from medication.  A.R. 446.  At a therapy session the same month, Plaintiff discussed how people in his past wanted to kill him.  A.R. 445-46.  At a January 2018 therapy session, Plaintiff again reported no improvement in his depression despite a recent increase in medication.  A.R. 538.  At an August 2018 appointment, Plaintiff reported that he experienced episodes of elevated mood, as well as depression "on most days most of the day," despite some improvement from a recent medication increase.  A.R. 509.  He also noted that he had an episode of auditory hallucinations two months prior.  *Id.*  In September 2018, Plaintiff reported that while he was responding well to medication and his depression had improved, his anxiety was still high.  A.R. 496.

In short, the ALJ's reliance on portions of the medical record showing temporary improvement in Plaintiff's mental health symptoms amounts to "improper cherry-pick[ing]" and is not a clear and convincing reason to discount Plaintiff's testimony considering the record as a whole.  *Ghanim*, 763 F.3d at 1164; *see also Joseph S. v. Comm'r of the Soc. Sec. Admin*, No. CV-19-03375-PHX-DGC, 2020 WL 1694737, at *8 (D. Ariz. Apr. 7, 2020) ("The Court cannot affirm the ALJ's opinion simply by isolating a 'specific

quantum of supporting evidence' out of a mixed and complex record, about which the ALJ failed to make comprehensive, specific, and legitimate findings."); *Garrison*, 759 F.3d at 1017 ("As we have emphasized while discussing mental health issues, it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment. Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.").[5]

### B.   Mental Health Provider Opinions.

Plaintiff also contends that the ALJ erred by rejecting the opinions of Plaintiff's treating mental health providers, Derin Darlington, QMHA (qualified mental health associate) and Philip Viebeck, QMHP (qualified mental health professional).

At the time Plaintiff's claim was filed, the Social Security Regulations differentiated between "acceptable medical sources," which included licensed physicians, psychologists, optometrists, and podiatrists, and "other" sources, which included nurse practitioners, physician's assistants, therapists, public and private social welfare agency personnel, and family. 20 C.F.R. §§ 404.1513 (2013); SSR 06-03p; *see also* 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1) (applicable to claims filed before March 27, 2017 and referring to statements from "acceptable medical sources"); 20 C.F.R. §§ 404.1527(f)(1), 416.927(f)(1) (2017) (applicable to claims filed before March 27, 2017 and referring to opinions from sources who are not "acceptable medical sources").[6]  Neither party disputes that Darlington and

---

[5] For the same reasons, the Court cannot conclude that the observations of Plaintiff's primary care physician Michael Allen – about Plaintiff's "normal" mood and effective medication regimen – constitute a clear and convincing reason to reject Plaintiff's testimony. *See* A.R. 576. Dr. Allen treated Plaintiff for his knee pain, not depression, and as discussed above there is extensive documentation from Plaintiff's mental health providers about his depression and mood disorder symptoms. *See Widmark v. Barnhart*, 454 F.3d 1063, 1068 (9th Cir. 2006) ("It is reasonable, based on these facts, to expect that [claimant's] examining physicians focused their attention on the subject of his complaint…").

[6] For claims initiated after March 27, 2017, new regulations apply. *See* 20 C.F.R. §§ 404.1502, 404.1513, 416.902, 416.913 (2017).

Viebeck are "other" sources under the applicable regulations.[7]

While "other" sources may not be "acceptable medical sources" under the regulations, the Social Security Administration ("SSA") has stated that they "are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." Doc. 19 at 22 (quoting SSR 06-3p, 2006 WL 2329939, at *3). The SSA stated:

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not 'acceptable medical sources,' such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed 'acceptable medical sources' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

*Id.*

An ALJ may discount an "other" source only if the ALJ provides "germane" reasons. *Ghanim*, 763 F.3d at 1154. Germane reasons are legally sufficient, however, only if they are supported by substantial evidence in the record. *See Sullivan v. Colvin*, 588 Fed. App'x 725, 726 (9th Cir. 2014); *Carter v. Astrue*, 472 Fed. App'x 550, 553 (9th Cir. 2012); *Gilbert v. Comm'r Soc. Sec. Admin.*, No. 6:14-CV-02035-MA, 2016 WL 126370, at *6 (D. Or. Jan. 11, 2016); *Nguyen v. Colvin*, 95 F. Supp. 3d 1286, 1297 (D. Or. 2015).

In a May 2017 medical source statement questionnaire, Darlington concluded, among other things, that Plaintiff would be precluded from performing a job for 30 percent of an 8-hour work day because his mental impairments significantly hindered his ability to understand, remember, and carry out detailed instructions; ask simple questions or request assistance; respond appropriately to criticism from supervisors or changes in the work

---

[7] Defendant contends that "[t]here is no dispute over the fact that the regulations define Plaintiff's treating providers at issue as nonmedical sources." Doc. 20 at 6. While Plaintiff agrees that Darlington and Viebeck are not "acceptable medical sources" under the regulations, he does not claim they are not "*medical*" sources. Doc. 19 at 21. Under the regulations applicable at the time Plaintiff filed his claim, "other" medical sources could be both medical sources (such as therapists) and nonmedical sources (such as spouses and caregivers). 20 C.F.R. §§ 404.1513(d) (2013). Darlington and Viebeck, as mental health therapists, appear to fall into the former category. *See* Doc. 19 at 21.

setting; set realistic goals or make plans independently of others; and complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. A.R. 454-57. Darlington also noted that Plaintiff would miss five days or more of work per month due to his impairments. A.R. 457.

In an October 2018 medical source statement, Viebeck noted that Plaintiff's mental impairments precluded performance and productivity for 30 percent of an 8-hour workday in several of the same key areas of functioning identified by Darlington, including completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods. A.R. 571-73. Viebeck concluded that Plaintiff would miss an average of one day per month due to his impairments. A.R. 574. Viebeck further noted that Plaintiff's "depression is debilitating, but it's his combination of depression and limited cognitive functioning/flexibility associated with his diagnoses of bipolar . . . [and] schizophrenia . . . that result in significant impairment." *Id.*

The ALJ claims to have accorded "partial weight" to the opinions of Darlington and Viebeck, but the parties agree that the ALJ effectively rejected both. Docs. 19 at 22; 20 at 7 ("The ALJ stated that he gave their statements partial weight . . . but Defendant concedes that the ALJ essentially rejected their statements."). The ALJ stated no reason for giving Viebeck's opinion partial weight. With respect to Darlington's opinion, the ALJ stated only that the limitations set forth by Darlington in his medical source statement questionnaire (A.R. 453-57) were "not consistent with the records available in the file." A.R. 30. The ALJ provided no explanation for this conclusion. *See id.*

Defendant correctly notes that "inconsistency with medical evidence" can be a germane reason for discounting the opinions of "other" medical sources such as Darlington and Viebeck. *See* Doc. 20 at 7 (citing *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005)).[8] But the ALJ's "conclusory statement" about inconsistency with the medical

---

[8] The Commissioners cite *Bayliss* for the proposition that "inconsistency with medical evidence" is a germane reason for discounting lay witness testimony. Doc. 20 at 7. The

- 13 -

record, without substantial evidence to support that opinion, "is not a germane reason supported by substantial evidence that justifies discrediting [the opinion of an "other" medical source]." *Christopher E. v. Comm'r of Soc. Sec. Admin.*, No. 6:18-CV-00824-MK, 2019 WL 3716463, at *7 (D. Or. Aug. 7, 2019); *Jones v. Berryhill*, No. 2:17-CV-00293-BHS-DWC, 2017 WL 5178514, at *6 (W.D. Wash. Oct. 16, 2017) (ALJ erred in giving "conclusory" reasons, without explanation, for discounting the opinions of mental health counselors); 20 C.F.R. § 404.1527(f)(2) (ALJ should explain the weight given to opinions from "not acceptable medical sources" in a way which allows reviewers "to follow [the ALJ's reasoning].").

Defendant argues that the ALJ did not err in rejecting the opinions of Darlington and Viebeck because the medical record contained documentation from three other medical sources contradicting those opinions. QMHP Brianna Boggs, one of Plaintiff's therapists, completed a medical source statement in May 2017 concluding that Plaintiff's mental impairments would not preclude performance of a simple or detailed job, and that Plaintiff would be off-task 5 percent or less of an 8-hour workday. A.R. 458-61. Two state agency psychologists, Ben Kessler and Irmgard Friedburg – "acceptable medical sources" under the regulations – stated in mental RFC assessments from February and May 2017 that Plaintiff was capable of understanding, remembering, and carrying out simple instructions, appropriate supervisor interaction, occasional public contract, and cursory co-worker contact. A.R. 170-72, 184-86.

The Court disagrees with Defendant. First, the opinions of Boggs, Kessler, and Friedburg were not the stated bases for the ALJ's rejection of the opinions of Darlington and Viebeck and thus cannot constitute "germane" reasons for discounting those latter opinions. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1116 (9th Cir. 2008) ("We can't defer to reasoning that we can't review."). Moreover, the ALJ – while technically giving all three opinions partial weight – appeared to disagree with their conclusions. *See* A.R. 26, 29; Doc. 26 at 2. With respect to the opinions of Kessler and Friedberg, the ALJ stated

same standard applies to the testimony of "other" medical sources such as Darlington and Viebeck. *Ghanim*, 763 F.3d at 1161.

- 14 -

only that Plaintiff's testimony at the hearing "more accurately reflect[ed] the state of [Plaintiff's] impairments" – without offering further explanation – and that the listings for mental impairments had changed since Kessler and Friedburg had reviewed Plaintiff's file. A.R. 29. In granting Boggs's opinion partial weight, the ALJ noted that Boggs's assessment that Plaintiff had no severe mental health impairments contradicted his own conclusion that Plaintiff's schizophrenia, bipolar disorder, and depression were "severe" impairments that would "significantly limit the ability to perform basic work activities." A.R. 26.

Additionally, Kessler and Friedburg were state agency consultants who issued their opinions based on information contained in the record at the time of the state agency reconsideration determination in this case, without considering any medical records or providing treatment to Plaintiff. A.R. 30; *see also* 20 C.F.R. § 404.1616; *Boettcher v. Sec. of Health & Human Servs.,* 759 F.2d 719, 722-23 (9th Cir. 1985) ("Under the statutory scheme, initial and reconsideration determinations are made by a state agency based only on paper reviews."). Darlington and Viebeck, on the other hand, personally observed and treated Plaintiff over several months in 2017 and 2018, respectively. *See, e.g.*, A.R. 433, 438, 445, 448, 454-57, 508, 513, 571-74. Under the Social Security Regulations, these distinctions are far from insignificant:

> Depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an acceptable medical source or from a nonmedical source may outweigh the medical opinion of an acceptable medical source, including the medical opinion of a treating source. For example, it may be appropriate to give more weight to the opinion of a medical source who is not an acceptable medical source if he or she has seen the individual more often than the treating source, has provided better supporting evidence and a better explanation for the opinion, and the opinion is more consistent with the evidence as a whole.

20 C.F.R. § 404.1527(f)(1). The Court concludes that the ALJ erred by not providing germane reasons for discounting the opinions of Darlington and Viebeck.

### C. Scope of Remand.

Plaintiff contends that, crediting his testimony as true, the Court must remand for an award of benefits. Doc. 19 at 23. Defendant counters that the appropriate remedy is a remand for further proceedings. Doc. 20 at 10.

"When the ALJ denies benefits and the court finds error, the court ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Under a "rare exception" to this rule, the Court may remand for an immediate award of benefits after conducting a three-part inquiry:

> The three-part analysis . . . is known as the "credit-as-true" rule. First, we ask whether the ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. Next, we determine whether there are outstanding issues that must be resolved before a disability determination can be made, and whether further administrative proceedings would be useful. When these first two conditions are satisfied, we then credit the discredited testimony as true for the purpose of determining whether, on the record taken as a whole, there is no doubt as to disability.

*Id.* (internal quotation marks and citations omitted). *Leon* emphasized that the Court has discretion to remand for further proceedings even if it reaches the third step in the process. *Id.* "Where an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency." *Id.* (quotation marks omitted).

The first step of the credit-as-true inquiry is satisfied because, as discussed above, the ALJ failed to provide legally sufficient reasons for discounting Plaintiff's testimony and the opinions of Darlington and Viebeck.

With respect to step two, Defendant contends that further administrative proceedings are warranted for several reasons. First, Defendant argues that remand for payment is not appropriate based on the opinions of Darlington and Viebeck, who are not "acceptable medical sources" under the Social Security Regulations. Doc. 20 at 12. But Defendant cites no authority in support of this proposition, and as Plaintiff observes, the Ninth Circuit has in the past remanded for determination of benefits in part based on the

ALJ's error in discounting "other source" opinions.  Doc. 26 at 13-14 (citing *Popa v. Berryhill*, 872 F.3d 901, 906 (9th Cir. 2017)).

Defendant further contends that the opinions of Darlington and Viebeck, as well as Plaintiff's symptom testimony, are contradicted by Plaintiff's "consistent trend of improvement" after receiving treatment; various mental status examinations revealing normal findings; and certain statements by Plaintiff indicating he was more interested in documenting disability than actual receiving treatment.  Doc. 20 at 9, 12.  The Court does not agree.  As discussed above, isolated instances of improvement in Plaintiff's medical records are not grounds for rejecting either Plaintiff's symptom testimony about the debilitating effects of his depression or Darlington and Viebeck's conclusions that Plaintiff would be unable to perform  a job for 30 percent of an 8-hour work day.  *Garrison*, 759 F.3d at 1018 ("[W]hile discussing mental health issues, it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment."); *see also Aretha F. v. Comm'r of Soc. Sec. Admin.*, No. CV-18-2226-PHX-DGC, 2019 WL 802511, at *5 (D. Ariz. Feb. 21, 2019) ("[I]solated treatment notes reflecting Plaintiff's positive condition on a single day do not contradict the severity of Plaintiff's reported symptoms or assessment of her limitations.").  Nor can the Court conclude that Plaintiff's interest in receiving disability benefits somehow renders his symptom testimony less credible**.**  As Plaintiff notes, "there is nothing inconsistent about a person who is not able to perform a job not wanting to look for a job."  Doc. 26 at 9.

The Court does conclude, however, that there is ambiguity in the record about the extent to which Plaintiff's impairments prevent him from working.  Most notable are the vastly divergent opinions of Boggs and Darlington, both qualified mental health providers who personally treated Plaintiff and filled out medical source statements about him in May 2017.  *Compare* A.R. 454-57 *with* A.R. 458-61.  Darlington noted that Plaintiff was unable to effectively engage in the workforce due to his bipolar disorder, became distracted from the task at hand due to his depression and anxiety, was precluded from performing a job for 30 percent of an 8-hour work day, and would miss more than five days of work per

month due to his impairments. A.R. 454-57. Boggs, on the other hand, concluded that Plaintiff would be unable to perform work for 5 percent or less of the workday and indicated that while she was unsure about Plaintiff's ability to concentrate and pay attention for extended periods of time, she had not "seen any indication as to why [Plaintiff] couldn't" do so. A.R. 459-61.

Plaintiff argues that any conflicts in the medical record, including Boggs's opinion, do not constitute the types of "significant" factual conflicts justifying remand for further proceedings. Doc. 26 at 14 (citing *Treichler v. Comm'r. of Soc. Sec. Admin.*, 775 F.3d 1090 (9th Cir. 2014)). But the Ninth Circuit has found remanding for a calculation of benefits justified where the "record is fully developed" and evidence of disability from treating sources is "extensive" and "unanimous." *See, e.g., Martinez v. Berryhill*, 721 Fed. App'x 597, 601 (9th Cir. 2017); *see also Treichler*, 775 F.3d at 1103-04 ("In a step two analysis, the court must consider whether the record as a whole is free from conflicts, ambiguities, or gaps[.]") (citations omitted). This case does not fall into that category. The medical source statements completed by Boggs, Darlington, and Viebeck were comprised of checklists with a few sentences of explanation and cannot be categorized as "extensive." Nor was the evidence unanimous: Boggs and Darlington arrived at opposite conclusions about Plaintiff's ability to work, and these contradictions raise questions regarding the extent of his disability.

The Court also notes that further administrative proceedings would be useful to elicit testimony from Plaintiff about his ability to work. Darlington and Viebeck opined that Plaintiff's ability to complete a normal workday and workweek without interruptions for psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods, was impacted 30 percent of the time. A.R. 457, 572. At the administrative hearing, the VE testified that if this were true, Plaintiff would be unable to perform competitive work in the unskilled jobs he identified. A.R. 154-55. But Plaintiff himself never testified that he would need to be absent from work more than two days per month, or otherwise clarified in what ways his symptoms would fit the

hypothetical considered by the VE – something which could assist the ALJ in making a disability determination.

**IT IS ORDERED:**

1. The decision of the Commissioner of Social Security to deny Plaintiff disability insurance benefits is **reversed and remanded** for further proceedings consistent with this order.

2. The Clerk shall enter judgment accordingly and terminate this case.

Dated this 26th day of April, 2021.

David G. Campbell
Senior United States District Judge

- 19 -